IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLENN L. GOODHART
M.D.,

    Plaintiff,

      v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-3299-TWT

ORDER

This case arises from the Plaintiff's dispute with the Department of Health and

Human Services (HHS) over whether he received overpayments for medical treatment

that he provided to Medicare beneficiaries.  It is before the Court on the Defendants'

Motion for Dismissal or for Summary Judgment [Doc. 17], which is GRANTED.

I.   Introduction

Dr. Goodhart owns and operates a hyperbaric oxygen therapy (HBOT) facility

in Decatur, Georgia.   As part of his practice, he provides HBOT to Medicare

beneficiaries.  HBOT is covered under Medicare Part B, which authorizes payments

for medically-necessary services like physicians' services, outpatient care, and home

health services.  The Medicare Claims Processing Manual directs Medicare providers

T:\ORDERS\09\Goodhart\mtdtwt.wpd

to use two codes for HBOT reimbursement. The 99183 code covers "physician attendance and supervision." Medicare Claims Processing Manual, ch. 32 § 30. Providers may bill Medicare for one unit of the 99183 code "per session." <u>Id.</u> The C1300 code covers other technical fees associated with HBOT in hospital outpatient facilities.

Dr. Goodhart could not bill any units of the C1300 code because he did not provide HBOT at a hospital facility. He says that one unit of the 99183 code did not cover the cost of an HBOT session. Therefore, he asked Cahaba Government Benefit Administrators, his Medicare carrier, if he could receive additional reimbursement in other ways. According to the complaint, a Cahaba employee told him that he could bill three units of the 99183 code for each HBOT session even though the Medicare Claims Processing Manual directed providers to bill only one unit per session.

Following this guidance, Dr. Goodhart billed Medicare for three units of the 99183 code for each HBOT treatment he rendered to Medicare beneficiaries between February and November 2006. Cahaba reimbursed Dr. Goodhart for the full amount requested. However, in 2007, Cahaba, following the Medicare Claims Processing Manual, determined that Dr. Goodhart had received overpayments by consistently billing three units of the 99183 code per session instead of one unit per session.

According to Dr. Goodhart, a Cahaba employee told him that he could pay $2,552.59 to reimburse Cahaba for the overpayments.  Dr. Goodhart paid Cahaba the requested amount.  Several months later, Cahaba conducted a formal audit of Dr. Goodhart's cost reports and determined that he had been overpaid by nearly $45,000.  Shortly thereafter, Cahaba demanded full repayment.  Dr. Goodhart appealed Cahaba's decision to an administrative law judge.  The ALJ upheld Cahaba's decision.  Dr. Goodhart then appealed to the Medicare Appeals Council (MAC), which upheld the ALJ's decision.  He now seeks judicial review of the MAC's decision in this Court pursuant to 42 U.S.C. § 405(g).

## II.   Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965-66 (2007); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely."  Twombly, 127 S. Ct. at 1965 (citations and quotations omitted).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness

Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Twombly, 127 S. Ct. at 1964).

### III.   Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to

show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 257 (1986).

## IV.   Discussion

### A.    <u>Breach of Contract and Unjust Enrichment Claims</u>

In Counts I, II, and III, Dr. Goodhart sues the Government for breach of

contract and unjust enrichment under Georgia common law.  However, 42 U.S.C. §

405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that §

405(g) is the only avenue for judicial review of "claims arising under" the Medicare

Act.  A claim arises under the Medicare Act if it is "inextricably intertwined" with a

claim for Medicare benefits – in other words, if the claim is "at bottom, a claim that

[the provider] should be paid."  <u>See</u> <u>Heckler v. Ringer</u>, 466 U.S. 602, 614 (1984).  The

claims set forth these counts are just that.  Therefore, Dr. Goodhart is not entitled to

relief under Georgia law.

In his response brief, Dr. Goodhart seems to argue that Counts I and III are

additional grounds for challenging the Secretary's decision under 42 U.S.C. §

1395ff(b) rather than independent state law claims.  This is not apparent from the

complaint.  However, even if it were, the facts alleged in these counts do not provide

a basis for relief.  Dr. Goodhart seems to argue that the Government should be

estopped from collecting the disputed amount based on Cahaba's misrepresentation

that he could bill three units of the 99183 code for each HBOT session.  To claim estoppel, a plaintiff must show that he reasonably relied on another's misstatement and that this reliance caused him to change his position for the worse.  Dr. Goodhart cannot show either.

First, he cannot show that his reliance was reasonable.  As a participant in the Medicare program, Dr. Goodhart had a duty to familiarize himself with the regulations regarding HBOT reimbursement and with the limitations on Cahaba's role in interpreting these regulations.  Had he done so, he would have realized that Cahaba's guidance was inconsistent with the Medicare Claims Processing Manual and that Cahaba was required to comply with the Manual as a Medicare carrier.

The Supreme Court considered very similar facts in Heckler v. Community Health Services, 467 U.S. 51 (1984).  There, the respondent, a healthcare provider, received federal funds under the Comprehensive Employment and Training Act (CETA) to reimburse it for the salaries and fringe benefits paid to certain of its employees.  It asked Travelers, its Medicare carrier, whether the salaries of its CETA-funded employees who provided services to Medicare patients were also reimbursable as reasonable costs under Medicare.  Travelers said that they were.  The respondent relied on this guidance and sought and received reimbursement for these costs under Medicare.  Several years later, Travelers learned from HHS that it was supposed to

subtract CETA funds from providers' reimbursable costs.  Travelers reopened the respondent's cost reports and determined that the provider had been overpaid by nearly $70,000.  Shortly thereafter, it made a formal demand for repayment.  The respondent sued HHS arguing that Travelers should be estopped from collecting the $70,000.

The Supreme Court held that the respondent's reliance on Travelers' informal advice was unreasonable.  It explained that the respondent should have known that Travelers' advice was incorrect based on the applicable statute, regulations, and reimbursement manual.  The Court also emphasized that "the appropriateness of [the] respondent's reliance [was] further undermined because the advice it received from Travelers was oral."  It explained:

> The necessity for ensuring that governmental agents stay within the lawful scope of their authority, and that those who seek public funds act with scrupulous exactitude, argues strongly for the conclusion that an estoppel cannot be erected on the basis of the oral advice that underlay respondent's cost reports.  That is especially true when a complex program such as Medicare is involved, in which the need for written records is manifest.

Id. at 65.  The same considerations apply here.

Dr. Goodhart's estoppel claim also fails because he cannot show a sufficiently adverse change-in-position.  He says that repaying $45,000 will hurt his practice.

However, the Supreme Court held in Community Health Services that this type of injury does not justify estoppel:

> [Respondent's] detriment is the inability to retain money that it should never have received in the first place. Thus, this is not a case in which the respondent has lost any legal right, either vested or contingent, or suffered any adverse change in its status. When a private party is deprived of something to which it was entitled of right, it has surely suffered a detrimental change in its position. Here respondent lost no rights but merely was induced to do something which could be corrected at a later time.

Id. at 61-62. Therefore, even if Dr. Goodhart had properly pled estoppel, he would not be entitled to relief. His state law claims are dismissed.

> B.     FOIA Claim

Dr. Goodhart also sues the Government under the Freedom of Information Act (FOIA). He says that HHS did not properly respond to his request for five categories of documents. It is undisputed that HHS turned over 789 pages of records. The issue is whether HHS improperly withheld portions of sixteen redacted pages under Exemption 5 of the FOIA. Exemption 5 protects from disclosure all "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have construed this language to exempt "those documents . . . normally privileged in the civil discovery context," including those covered by the deliberative process privilege. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).

According to HHS, the withheld portions of the redacted pages were internal CMS or Cahaba email messages that contained advice, opinions, and recommendations that were part of the agency's deliberative decision-making process. (Peters Decl. ¶ 33.) HHS says that these emails were properly withheld because they are protected by the deliberative process privilege, which covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Moye v. National R.R. Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004).

In response, Dr. Goodhart argues that summary judgment on his FOIA claim is inappropriate for two reasons. First, he says that the Court should not consider the Peters declaration. However, Rule 56 of the Federal Rules of Civil Procedure explicitly permits parties to file supporting affidavits. Second, Dr. Goodhart says that Exemption 5 is not available to an agency during litigation. The Court finds no support for this argument in the statute itself. To the contrary, courts have regularly applied this exemption to documents during civil discovery. Dr. Goodhart raises no arguments about the content of the documents themselves. Therefore, the Government is entitled to summary judgment on the FOIA claim.

C.      Due Process Claim

In Count IV, Dr. Goodhart says that the ALJ erroneously admitted into evidence certain documents that "were not authenticated, were not best evidence and were hearsay."  He argues that this amounts to a due process violation.  However, an ALJ has considerable discretion in determining what evidence to admit.  See 42 C.F.R. § 405.1036(e) ("The ALJ may receive evidence at the hearing even though the evidence is not admissible in court under the rules of evidence used by the court."); see also 42 U.S.C. § 405(b) ("Evidence may be received at any hearing before the [Secretary] even though inadmissible under rules of evidence applicable to court procedure."). Dr. Goodhart cites Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008) to support his position.  In Basco, the Eleventh Circuit held that there are due process limits on the circumstances under which hearsay may constitute "substantial evidence" in administrative proceedings.  Id. at 1182.  However, there is no indication in the pleadings or the administrative record that the ALJ or the MAC relied on these documents at all.  To the contrary, the ALJ and the MAC both emphasized that their conclusions were based on Dr. Goodhart's undisputed overuse of the 99183 code.  See ALJ Decision at 9-10; MAC Decision at 6.  Therefore, the Government is entitled to summary judgment on this claim.

D.    Other Arguments

Dr. Goodhart raises a number of other arguments in his response brief that are not relevant to the claims asserted in the complaint.  He says, for example, that it is unfair that he cannot use the C1300 code.  He also says that the C1300 and 99183 codes are not the only codes available to HBOT providers.  The issue, however, is whether Dr. Goodhart overused the 99183 code, not whether other codes were available.

V.   <u>Conclusion</u>

For the reasons stated above, the Defendants' Motion for Dismissal or Summary Judgment [Doc. 17] is GRANTED.

SO ORDERED, this 27 day of August, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge